IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DIGIMEDIA TECH, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RESIDEO TECHNOLOGIES, INC. and RESIDEO LLC,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 2:25-cv-731<br><br>**Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DigiMedia Tech, LLC ("Plaintiff") files this Complaint for Patent Infringement and states as follows:

## THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 44 Milton Ave., Suite 254, Alpharetta, GA 30009.

2. Defendant Resideo Technologies, Inc. ("Resideo") is a corporation formed under the laws of Delaware with its principal executive offices and corporate headquarters located at 16100 N. 71st Street, Suite 550, Scottsdale, Arizona. Resideo is registered to do business in Texas.

3. Defendant Resideo LLC ("Resideo LLC") is a corporation organized under the laws of Delaware with its principal place of business at 115 Tabor Rd., Morris Plains, NJ 07950.

Resideo LLC is registered to do business in Texas. Resideo LLC is a wholly owned subsidiary of Resideo. Resideo and Resideo LLC are referred to herein collectively as "Defendant."

## JURISDICTION AND VENUE

4.  This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

5.  This Court has personal jurisdiction over Defendant, consistent with due process, because Defendant has minimum contacts with this State and has purposefully availed itself of the privileges of conducting business in this State. For example, on information and belief, Defendant has sold or offered to sell infringing products in this State and in this Judicial District, or has manufactured accused products and provided them to intermediaries for distribution throughout the country, including in this State and this Judicial District, with knowledge of this distribution.

6.  On information and belief, Defendant on its own and/or via subsidiaries, distributors, and affiliates maintains a corporate and commercial presence in this District, including via branch locations in Texas where consumers may pick up purchased products. For example, on information and belief, Defendant employs Texas residents at various locations. *See* https://www.resideo.com/us/en/corporate/about/careers ("Search Job Opportunities"). Defendant's facility at 2601 Petty Place, Fort Worth, TX, 76177 is located within this District. On information and belief, Defendant maintains employees and/or agents at this facility to conduct business. On information and belief, Resideo controls or otherwise directs and

authorizes all activities of its subsidiaries, distributors, and affiliates, including, but not limited to Resideo LLC.

7. Venue is proper in this Court as to Resideo and Resideo LLC pursuant to 28 U.S.C. § 1400(b) because, on information and belief, they have each committed acts of infringement in this Judicial District and have a regular and established place of business in this Judicial District.

## FACTUAL BACKGROUND

*Plaintiff's Effort to Resolve Its Dispute with Resideo Outside of Court*

8. Plaintiff, via its licensing agent, first contacted Resideo about its patent portfolio by letter dated December 13, 2022, informing Resideo about its portfolio and inviting Resideo to engage in a dialogue regarding a license to the portfolio. Plaintiff's licensing agent followed up by email on January 18, 2023.

9. On September 27, 2023, Plaintiff's licensing agent again contacted Resideo via email regarding Plaintiff's portfolio, along with the portfolios of sister entities owning a total of approximately 4,000 patent assets. Plaintiff's licensing agent requested a call to discuss a potential license to these portfolios. Plaintiff's licensing agent followed up by email on October 18, 2023.

10. On May 15, 2024, Plaintiff's licensing agent again contacted Resideo regarding the portfolios of Plaintiff and its sister entities. Plaintiff's licensing agent followed up on June 19, 2024, and July 9, 2024.

11. More recently, Plaintiff's licensing agent again contacted Resideo on May 14, 2025, attempting to engage Resideo in a licensing discussion. Plaintiff's licensing agent followed up by email on May 28, 2025.

12. Plaintiff did not receive a response to any of these outreaches.

***The '250 Patent***

13. Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,741,250, entitled "Method and System for Generation of Multiple Viewpoints into a Scene Viewed by Motionless Cameras and for Presentation of a View Path" ("the '250 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

14. A true and correct copy of the '250 patent is attached hereto as Exhibit A. The '250 patent is incorporated herein by reference.

15. The application that became the '250 patent was filed on October 17, 2001.

16. The '250 patent issued on May 25, 2004, after a full and fair examination by the USPTO.

17. The '250 patent is and is legally presumed to be valid, enforceable, and directed to patent-eligible subject matter.

18. The elements recited in the claims of the '250 patent were not well-understood, routine, or conventional when the application that became the '250 patent was filed.

19. The '250 patent identifies shortcomings in the art as it existed before the '250 patent. *See, e.g.,* '250 patent at 2:20-37; 2:45-58. The '250 patent also identifies desirable improvements to the existing art. *Id*. at 2:38-44; 2:59-62. The '250 patent improves upon these

shortcomings in the art as it existed prior to the invention of the technical solutions disclosed and claimed in the '250 patent.

20.     The claims of the '250 patent are directed to technical solutions to the technical problem of using a camera system to provide a view path through one or more video segments to determine which video frames in the video segments are used to generate a view. One of the reasons this is important is that users of camera systems with a wide field of view may prefer to select and view (or have selected for them) only portions of the supported wide field of view. The field of view may be sufficiently wide to create distorted images. Users may prefer portions with reduced distortion, which calls for technical solutions.  The '250 patent discloses and claims such technical solutions. The camera system can record a video stream over a wide field of view. The camera system and/or a user can designate a portion of the video stream to be a video segment and subsequently designate a view path through the video segment. Consequently, the technology in the '250 patent enables the view of portions of the camera system's wide field of view with reduced distortion.

21.     For example, claim 1 of the '250 patent claims:

1. A method of:

recording a video stream comprising a plurality of frames, wherein said plurality of frames define a plurality of distorted images;

designating a portion of said video stream to be a video segment; and

specifying a view path through said video segment.

22.     The set of steps recited in claim 1 of the '250 patent provides a technical solution to the technical problem of providing view paths without distortion.

23.     The claimed set of steps set forth in the '250 patent constitutes patent-eligible subject matter, is not directed to an abstract idea, law of nature, or natural phenomenon, and contains one or more inventive concepts for providing view paths without distortion.

24.     This claimed set of steps was not well-understood, routine, or conventional at the time of the invention. This is evidenced, for example, by the '250 patent's assertions, including those referenced herein, that the disclosed and claimed inventions improved upon technological shortcomings in the existing art.

25.     That the claimed set of steps was not well-understood, routine, or conventional at the time of the invention is further evidenced by the fact that the inventors of the '250 patent submitted sworn declarations, subject to penalty for willful false statements, that "I/we believe that I/we am/are the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought."

26.     That the claimed set of steps was not well-understood, routine, or conventional at the time of the invention is further evidenced by the prosecution history of the '250 patent. The U.S. Patent & Trademark Office has stated that the duties of a Patent Examiner include the following:

- Reads and understands the invention set forth in the specification
- Determines whether the application is adequate to define the metes and bounds of the claimed invention
- Determines the scope of the claims
- Searches existing technology for claimed invention
- Determines patentability of the claimed invention

Exhibit B at 11, The Role of the Patent Examiner, Sue A. Purvis, Innovation and Outreach Coordinator, USPTO, available at

https://www.uspto.gov/sites/default/files/about/offices/ous/04082013_StonyBrookU.pdf.

6

27. Thus, the Examiner who examined the '250 patent, in accordance with his duties, (1) read and understood the invention set forth in the specification; (2) determined whether the application was adequate to define the metes and bounds of the claimed invention; (3) determined the scope of the claims; (4) searched existing technology for the inventions recited in the claims of the application; and (5) determined the patentability of the claims.

28. The Examiner performed these duties in his role as "advocate/protector of [the] public interest with respect to intellectual property," which involves a "cooperative investigation between the Examiner and the Applicant, which ensures an Applicant receives a patent only for that which they are entitled to in accordance with Patent laws." *Id*. at 8-9.

29. After conducting an examination of the claims of the application underlying the '250 patent, the Examiner determined that the claims of the '250 patent were allowable over the art of record. As set forth above, the '250 patent identifies shortcomings in the prior art. Had the Examiner determined that the claims of the '250 patent merely recited well-understood, routine, or conventional components, he would not have allowed the claims over the art of record. The fact that the Examiner did allow the claims shows that he did not determine that the claims of the '250 patent merely recited well-understood, routine, or conventional components.

30. The significance of the inventiveness of the '250 patent is illustrated by the fact that it has been cited in 153 other patent applications, including the following patents and published patent applications: US20020196327A1; US20030193562A1; US20030234866A1; US20040001137A1; US20040233222A1; US20040263636A1; US20040263611A1; US20040263646A1; US20040267521A1; US20050018687A1; US20050046626A1; US20050046703A1; US20050117034A1; US20050117015A1; US20050122393A1;

US20050151837A1; US20050180656A1; US20050190768A1; US20050206659A1; US20050243167A1; US20050243168A1; US20050243166A1; US20050280700A1; US20050285943A1; US20060023075A1; US20060022962A1; US20060092269A1; US7108378B1;  US20060268102A1; US20070022379A1; US20070058879A1; US20070124783A1; US20070156924A1; US20070165007A1; US7260257B2; US20070299912A1; US20070299710A1; US20070300165A1; US20080008458A1; US20080049123A1; US20080068352A1; US20080117296A1; US20080129700A1; US20080291279A1; US20080317451A1; US20090079740A1; US20090160801A1; US7593057B2; US20090305803A1; US7643006B2; US20100110005A1; US20100254670A1; WO2010127418A1; US20110043628A1; US20110095977A1; US20110128387A1; USRE42794E1; US8055022B2; US20110298917A1; US8089462B2; USRE43084E1; US8094137B2; US8115753B2; US8120596B2; US8149221B2; US8274496B2; US8289299B2; US8384693B2; US20130063427A1; US8405636B2; US8432377B2; US8456447B2; US8456418B2; US8508508B2; US8692768B2; US8902193B2; US20150042815A1; US9294757B1; US9591272B2; US9646444B2; US9674181B2; US20170214889A1; US9942520B2; US10129569B2; US10156706B2; WO2019017695A1; US10225479B2; US10230898B2; US10250889B1; US10250797B2; US10281979B2; US10284780B2; US10288840B2; US10288897B2; US10288896B2; US10291845B2; US10371928B2; US10379371B2; US10488631B2; US10534153B2; US10578948B2; US10615513B2; US10616484B2; US10635931B2; US10645286B2; US10694168B2; US10706518B2; US10845565B2; US10871561B2; US10884321B2; US10904512B2; USRE48444E1; US10951834B2; US10951859B2; US10955546B2; US10976567B2; US11037364B2;

US11272154B2; US11268829B2; US11277596B2; US11287081B2; US11315276B2; US11333955B2; US11363180B2; US11368631B1; US11378682B2; US11506778B2; US11525910B2; US11531209B2; US11635596B2; US11637977B2; US11640047B2; US11659135B2; US11693064B2; US11770618B2; US11770609B2; US11832018B2; US11900966B2; US11910089B2; US11949976B2; US11946775B2; and US11962901B2. These public documents and their related prosecution histories are incorporated herein by reference and provide concrete proof that the invention claimed and disclosed in the '250 patent was not well-understood, routine, or conventional at the time of the invention.

**The '532 Patent**

31. Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,473,532, entitled "Method and Apparatus for Visual Lossless Image Syntactic Encoding" ("the '532 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

32. A true and correct copy of the '532 patent is attached hereto as Exhibit C. The '532 patent is incorporated herein by reference.

33. The application that became the '532 patent was filed on March 14, 2000.

34. The '532 patent issued on October 29, 2002, after a full and fair examination by the USPTO.

35. The '532 patent is and is legally presumed to be valid, enforceable, and directed to patent-eligible subject matter.

36. The elements recited in the asserted claims of the '532 patent were not well-understood, routine, or conventional when the application that became the '532 patent was filed.

37. The claims of the '532 patent are directed to technical solutions to the technical problem of providing a visually lossless video compression method and apparatus. One of the reasons this is important is for storing video in a compressed format, where the compression does not reduce the quality of the video in a visually detectable manner. Since recording video programs must balance the competing features of both high-quality video and limited or practical video file sizes, the problem calls for technical solutions. The '532 patent discloses and claims such technical solutions.

38. For example, the '532 patent recognized that video encoding can compress the source video input in a manner that is visually lossless. The '532 patent discloses and claims a number of techniques that include defining visual perception thresholds and classifying picture elements into subclasses using the visual perception thresholds. The picture elements can be transformed according to the subclass. Consequently, the technology in the '532 patent enables both visually lossless encoding and efficient compression of recorded video.

39. Specifically, asserted claims 12, 16, and 17 of the '532 patent, which depend from independent claim 6, claim the following:

> 6. A method of visual lossless encoding of frames of a video signal, the method comprising steps of:
>
> spatially and temporally separating and analyzing details of said frames;
>
> estimating parameters of said details;
>
> defining a visual perception threshold for each of said details in accordance with said estimated detail parameters;
>
> classifying said frame picture details into subclasses in accordance with said visual perception thresholds and said detail parameters; and

> transforming each said frame detail in accordance with its associate subclass.
>
> 12. The method according to claim 6, wherein said step of transforming includes the step of filtering each subclass with an associated two dimensional low pass filter.
>
> 16. The method according to claim 6, and wherein said intensity is a luminance value.
>
> 17. The method according to claim 6, and wherein said intensity is a chrominance value.

40.     The sequence of steps set forth in asserted claims 12, 16, and 17 of the '532 patent provides a technical solution to the technical problem of providing a visually lossless video compression method.

41.     The claimed sequence of steps set forth in asserted claims 12, 16, and 17 constitutes patent-eligible subject matter, is not directed to an abstract idea, law of nature, or natural phenomenon, and contains one or more inventive concepts for accomplishing the competing goals of video compression and visually lossless video encoding.

42.     This claimed sequences were not well-understood, routine, or conventional at the time of the invention. The Examiner who examined the '532 patent, in accordance with his duties, (1) read and understood the invention set forth in the specification; (2) determined whether the application was adequate to define the metes and bounds of the claimed invention; (3) determined the scope of the claims; (4) searched existing technology for the inventions recited in the claims of the application; and (5) determined the patentability of the claims.

43.     The Examiner performed these duties in his role as "advocate/protector of [the] public interest with respect to intellectual property," which involves a "cooperative investigation

between the Examiner and the Applicant, which ensures an Applicant receives a patent only for that which they are entitled to in accordance with Patent laws." Exhibit B at 8-9.

44. After conducting an examination of claims 12, 16, and 17, the Examiner determined that they were allowable over the art of record. As set forth above, the '532 patent identifies shortcomings in the prior art. Had the Examiner determined that claims 12, 16, and 17 merely recited well-understood, routine, or conventional components, he would not have allowed them over the art of record. The fact that the Examiner did allow the claims shows that he did not determine that claims 12, 16, and 17 merely recited well-understood, routine, or conventional components.

45. The significance of the inventiveness of the '532 patent is illustrated by the fact that it or a family member has been cited in 33 other patent applications, including the following patents and published patent applications: US20020063719A1; US20030202705A1; US6744818B2; US20040131117A1; US20050270265A1; US20060001658A1; US20060020906A1; US20060017773A1; US20060188168A1; US20060236893A1; US20060250525A1; US20080129875A1; US7580031B2; US7583260B2; US20100100346A1; US7714831B2;US7742108B2; US7786988B2; USRE42148E1; US7903902B2; US9659544B2; US6735339B1; BRPI0303901B1; US7636488B2; KR100697516B1; US8780957B2; AR052601A1; US8755446B2; US8879856B2; US8948260B2; US9131164B2; TWI376644B; and US9842410B2. These public documents and their related prosecution histories are incorporated herein by reference and provide concrete proof that the invention claimed and disclosed in the '532 patent was not well-understood, routine, or conventional at the time of the invention.

## COUNT I – INFRINGEMENT OF THE '250 PATENT

46. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

47. Defendant has directly infringed one or more claims of the '250 patent. For example, Defendant has infringed at least claim 1 of the '250 patent, either literally or under the doctrine of equivalents, in connection with Defendant's C2 Camera, as detailed in the preliminary claim chart attached hereto as Exhibit D and incorporated herein by reference.

48. Defendant has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '250 patent. On information and belief, Defendant has performed all steps of this claim or, alternatively, to the extent a user performed any step, Defendant conditioned the user's use of the functionality of Defendant's accused instrumentalities described herein on the performance of that step. The accused functionality relates to the accused products' video processing functionality as set forth herein. On information and belief, a user of the accused instrumentalities could not use the functionality without performance of the recited steps. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a user to utilize the accused functionality, the recited steps had to be performed in the infringing manner. Otherwise, the accused functionality, and the corresponding benefit, would not have been available to users of the accused instrumentalities.

49. Defendant's infringing activities have been without authority or license under the '250 patent.

50. Because the asserted claim of the '250 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

51. Plaintiff has been damaged by Defendant's infringement of the '250 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

### COUNT II – INFRINGEMENT OF THE '532 PATENT

52. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

53. Defendant has directly infringed one or more claims of the '532 patent. For example, Defendant has infringed at least claims 12, 16, and 17 of the '532 patent, either literally or under the doctrine of equivalents, in connection with Defendant's C2 product, as detailed in the preliminary claim chart attached hereto as Exhibit E and incorporated herein by reference.

54. Defendant has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '532 patent. On information and belief, Defendant has performed all steps of these claims or, alternatively, to the extent a user performed any step, Defendant conditioned the user's use of the functionality of Defendant's accused instrumentalities described herein on the performance of that step. The accused functionality relates to the accused products' video recording functionality, as set forth herein. On information and belief, a user of the accused instrumentalities could not use the accused functionality without performance of the recited steps. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a user to utilize the accused functionality, the recited

steps had to be performed in the infringing manner. Otherwise, the video recording functionality of the accused instrumentalities, and the corresponding benefit, would not have been available to users of the accused instrumentalities.

55. Defendant's infringing activities have been without authority or license under the '532 patent.

56. Because the asserted claim of the '532 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

57. Plaintiff has been damaged by Defendant's infringement of the '532 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

    A.    Entry of judgment that Defendant has infringed one or more claims of the '250 patent,

    B.    Entry of judgment that Defendant has infringed one or more claims of the '532 patent,

C. Damages in an amount to be determined at trial for Defendant's infringement, which amount cannot be less than a reasonable royalty, including but not limited to those acts not presented at trial, and an accounting of all infringing acts,

D. Entry of judgment that this case is exceptional, and that Plaintiff be awarded all of its costs, expenses, and attorney's fees incurred in connection with this action,

E. Pre-judgment and post-judgment interest on the damages assessed, and

F. Such other and further relief, both at law and in equity, to which Plaintiff may be entitled and which the Court deems just and proper.

This 21st day of July, 2025.

/s/ *Cortney S. Alexander*
Cortney S. Alexander
cortneyalexander@kentrisley.com
Tel: (404) 855-3867
Fax: (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff